UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAMANTHA GUEVERA,

                Plaintiff,

v.

THE VILLAGE OF FREEPORT, et al.,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CV-4061-SJB-JMW

**BULSARA, United States District Judge:**

Plaintiff Samantha Guevera ("Guevera") seeks a preliminary injunction requiring that Defendants release her vehicle that the Village of Freeport ("Freeport") seized more than four months ago. In the alternative, Guevera requests an immediate hearing requiring Freeport to establish its right to continue to possess the vehicle. For the reasons explained herein, the motion for preliminary injunction is denied.

BACKGROUND AND PROCEDURAL HISTORY

Guevera filed this case on July 23, 2025 against Freeport, the Chief of the Freeport Police Department Michael Smith, a John Doe police officer, as well as JCB & Sons, Inc. (d/b/a Non-Stop Towing & Recovery) and its owner Jerome Bonomo (collectively, "Defendants"). (Compl., Dkt. No. 1). She filed an Amended Complaint on August 7, 2025. (Am. Compl., Dkt. No. 18). The Amended Complaint seeks declaratory relief and damages for the unlawful seizure of her vehicle. (*Id.* ¶ 1). The following allegations are drawn from the Amended Complaint and motion papers.

Freeport has a "Scofflaw Policy" (the "Policy") under which its police department conducts warrantless seizures of motor vehicles with outstanding unpaid

parking tickets.[1]  (*Id.* ¶¶ 21–22).  Guevera alleges that Freeport lacks a process for pre- or post- seizure hearings to challenge the seizure of a vehicle.  (*Id.* ¶¶ 23–24).  Though, at the same time, Guevera cites to the Village Code, which provides that "within 10 days of the impoundment, removal or seizure [Freeport] shall provide written notice . . . of the right to a retention hearing."  (*See* Vill. Code § 155-107(A), attached to Pl.'s Mot. in Supp. of Prelim. Inj. ("Pl.'s PI Mot.") as Ex. B, Dkt. No. 41-3 at 2).  Guevera also submitted one of the notices she received informing her of her right to such a hearing.[2]  (*See* Notice dated Aug. 22, 2025, attached to Pl.'s PI Mot. as Ex. C, Dkt. No. 41-4 at 2).  Freeport effectuates the seizures through JCB & Sons, a local towing and storage business.  (Am. Compl. ¶¶ 18, 29).

On July 18, 2025, an unidentified officer with the Freeport Village Police Department seized Guevera's car, which was by her apartment complex, because of

---

[1] Freeport's Policy (or its substantially similar predecessor) has been the subject of two federal lawsuits, as both parties note.  In *Toyota Lease Trust v. Village of Freeport*, the Court held that Freeport's Scofflaw Policy, as applied, violated plaintiff's Fourth and Fourteenth Amendment rights because the seizure was warrantless, with no applicable exception, and because there was no pre-deprivation notice.  No. 20-CV-2207, 2023 WL 4443992, at *8–*10 (E.D.N.Y. Jan. 24, 2023), *report and recommendation adopted in part*, 2023 WL 4449333 (Mar. 30, 2023).  No declaratory or injunctive relief was issued in the case, and a facial challenge was not resolved either.  *Higgs v. Village of Freeport* also found that the Policy, as applied, violated the Fourth and Fourteenth Amendment rights of the plaintiff there, but the Court declined to issue declaratory relief.  (*See* Report & Recommendation, *Higgs v. Vill. of Freeport*, No. 23-CV-3943 (E.D.N.Y. June 18, 2025), Dkt. No. 48 at 13, 21; Order dated Sep. 22, 2025, *Higgs*, No. 23-CV-3943 (E.D.N.Y. Sep. 22, 2025) (adopting R. & R. in part)).

[2] Guevera only includes a notice dated August 22, 2025 with her motion.  But Defendants, in their opposition, report that Guevera was first mailed a notice on July 28, 2025, which was delivered to her on July 30, 2025.  (*See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. filed Dec. 1, 2025 ("Defs.' Opp'n"), Dkt. No. 42 at 2; Notice and Tracking, attached to Defs.' Opp'n as Ex. C, Dkt. No. 42-4 at 2–4).

unpaid traffic tickets. (*Id.* ¶¶ 25–26). Guevera, citing issues receiving mail at her apartment, says she had no knowledge of any outstanding tickets. (*Id.* ¶ 27). The officer transferred possession of the vehicle to JCB & Sons for towing and storage. (*Id.* ¶ 28). Both Freeport and JCB & Sons have since demanded payment and liability releases to recover the car. (*Id.* ¶¶ 32, 38, 41). Both have also threated to "acquire title" and sell the vehicle if Guevera fails to pay. (*Id.* ¶ 42).

Guevera challenges the seizure under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations, (Am. Compl. ¶¶ 66–88), and under the New York Constitution, (*id.* ¶¶ 89–90). She also asserts, against all Defendants, a claim for a declaratory judgment that their conduct is unconstitutional and for damages and attorney's fees. (*Id.* ¶¶ 91–96). Finally, she brings a separate claim for conversion against JCB & Sons and Bonomo, pursuant to which she asks for punitive damages. (*Id.* ¶¶ 97–102).

On November 25, 2025, Guevera filed a motion for a temporary restraining order ("TRO") and preliminary injunction requiring the return of the vehicle. (Pl.'s PI Mot. at 1). In her motion, Guevera reports that she submitted multiple requests for a hearing, first on September 2, 2025 and then on October 7, 2025. (*Id.* at 2–3). Freeport scheduled a hearing for October 17, 2025,[3] though by that point, Guevera had lost her job, since she could not commute to work. (*Id.* at 3). As a further consequence of her lost income, she and her two children are at risk of eviction and homelessness. (*Id.*). The hearing officer

---

[3] Guevera received a notice of her right to a hearing on August 22, 2025, and requested one on September 2, 2025, but did not receive one until October 17, 2025, a timeline that Defendants do not contest. (Defs.' Opp'n at 8). The Village Code that both parties cite requires a hearing be commenced within 21 days from the time the notice of seizure is sent, which it appears was not honored. Vill. Code § 155-107(B)(4).

3

found that Guevera had seven outstanding unpaid parking tickets on her 2011 Jeep Grand Cherokee, all issued in less than a three-month span.  (Decision by Hr'g Officer dated Oct. 30, 2025, attached to Pl.'s PI Mot. as Ex. A, Dkt. No. 41-2 at 2).  The officer further concluded that those tickets were validly issued and that the seizure of her vehicle was proper, specifically noting that Guevera "does not contest receipt or notice of these parking violations."  (*Id.*)  But the officer lowered the amount of fees Guevera owed for the towing and storage to $ 746.64, since the vehicle was not parked in a location that posed a safety hazard and had a current registration.  (*Id.*).  Defendants note that the amount originally due as of the date of the hearing was $ 7,371.00.  (Defs.' Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. filed Dec. 1, 2025 ("Defs.' Opp'n"), Dkt. No. 42 at 2).  Guevera alleges that the hearing officer was not a neutral arbiter, "but merely an agent of" Freeport.  (Pl.'s PI Mot. at 3).  She also reports that she is unwilling to execute the release of liability Freeport requires as a condition of the return of her vehicle.  (*Id.* at 4).

The Court denied the TRO request and ordered briefing on the preliminary injunction.  (Order dated Nov. 25, 2025).  Defendants submitted an opposition on December 1, 2025.  (*See* Defs.' Opp'n).

## LEGAL STANDARD

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'"  *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)); *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024).  To obtain a preliminary injunction, a

4

party must clearly show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). A party must make a "clear showing," to obtain "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotations and citations omitted).

Preliminary injunctions may be "mandatory" or "prohibitory." *N. Am. Soccer League*, 883 F.3d at 36. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Id.* at 36–37 (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). The status quo in the context of a preliminary injunction is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (*per curiam*) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994)). A party moving for a mandatory injunction, or an injunction that "will provide the movant with substantially all the relief sought," which "cannot be undone even if the defendant prevails at a trial on the merits" must satisfy a heightened legal standard. *Yang v. Kosinski*, 960 F.3d 119, 127–28 (2d Cir. 2020) (quotations and citation omitted). The movant must both "(1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits," *id.* (quotations and citations omitted), as opposed to merely establishing irreparable harm and either a likelihood of

5

success or both a serious question as to the merits and decidedly prevailing on the balance of hardships.

## DISCUSSION

"Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)); *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023). "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez*, 175 F.3d at 234. Irreparable harm is an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). And a "plaintiff seeking a preliminary injunction must establish that . . . [it] is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. This is a "substantial" burden. *Daileader*, 96 F.4th at 358.

Guevera argues that "the Supreme Court has presumed irreparable harm" for constitutional claims. (Pl.'s PI Mot. at 7–8 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As the Second Circuit recently clarified, the holding of *Elrod* is not so broad. *See Nat'l Ass'n for Gun Rts. v. Lamont*, 153 F.4th 213, 248 (2d Cir. 2025) ("To satisfy [the irreparable harm] requirement, however, Plaintiffs argue only that a 'violation of constitutional rights per se constitutes irreparable injury.' This general assertion is incorrect." (citation omitted)). "To be sure, [the Second Circuit has] presumed

irreparable harm for alleged deprivations of certain constitutional rights," such as Fourth Amendment violations. *Id.* (citing *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744 (2d Cir. 2000) (noting irreparable harm presumed when plaintiffs alleged deprivations under Fourth and Eighth Amendments)); *e.g.*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) ("[W]e agree with the district court—given the fundamental right involved, namely, the right to be free from unreasonable searches—that Covino has sufficiently demonstrated for preliminary injunction purposes that he may suffer irreparable harm arising from a possible deprivation of his constitutional rights."). "But the Supreme Court has never applied this presumption outside the First Amendment context." *Nat'l Ass'n for Gun Rts.*, 153 F.4th at 248; *see also* 11A Charles Alan Wright & Arthur R. Miller et al., Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2025) ("Courts have largely rejected presumptions of irreparable harm except in the very narrow context of first amendment challenges. . . . [W]hen there is an alleged deprivation of a constitutional right to free speech or freedom of religion, many courts find that no further showing of irreparable injury is necessary. This principle has not (for the most part) and ought not be extended beyond the first amendment context."); *cf. Tripathy v. Lockwood*, No. 22-0949, 2022 WL 17751273, at *2 (2d Cir. Dec. 19, 2022) ("The district court erred in relying on *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) and *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (per curiam)—both intellectual property cases—for the proposition that Tripathy's delay in seeking enforcement of his rights was by itself sufficient to deny his motion for preliminary injunction. Rather, the loss of First Amendment freedoms, for even minimal periods of

7

time, is unquestionably considered irreparable injury for the purposes of a preliminary injunction." (quotations omitted)).

And even where a party has asserted that a presumption is appropriate, the Second Circuit has not applied it axiomatically. *See Nat'l Ass'n for Gun Rts.*, 153 F.4th at 248 (declining to decide whether the plaintiffs established irreparable harm in Second Amendment context). In the end, it is a presumption, not an immutable finding of irreparable harm. *See id.* And "any such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *e.g.*, *Williams v. County of San Diego*, No. 17-CV-0815, 2020 WL 7318125, at *5–*6 (S.D. Cal. Dec. 11, 2020) (applying presumption of irreparable harm to alleged Fourth Amendment violation, but finding that plaintiffs' delay "undermines the immediacy of any harm" and, "[i]n fact, it affirmatively weighs against a finding that imminent harm is likely"). Accordingly, the Court presumes that a Fourth Amendment violation garners a rebuttable presumption of irreparable harm and evaluates whether Defendants have overcome it by demonstrating Guevera's delay in seeking relief. The Court separately analyzes whether her injury is "actual and imminent," *Schneiderman*, 787 F.3d at 660, and remediable by monetary damages.

First, Guevera's delay in moving for injunctive relief weighs against the presumption that the harm is irreparable. "A district court should generally consider delay in assessing irreparable harm," *Tom Doherty*, 60 F.3d at 39, because a preliminary injunction implies an "urgent need for speedy action to protect the plaintiff['s]

rights," *Citibank, N.A. v. Citytrust*, 756 F.2d at 276.  Delay "indicate[s] an absence of the kind of irreparable harm required to support a preliminary injunction."  *Id.*  Sufficient delay may "preclude the granting of preliminary injunctive relief," entirely.  *Tough Traveler*, 60 F.3d at 968 (quoting *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985)).

"[T]he length of delay is measured from the time the plaintiff originally learned of the alleged violation or is put on notice thereof[.]"  *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 301 (S.D.N.Y. 2021) (citing *Tough Traveler,* 60 F.3d at 968).  Here, the delay, measured from the date of the deprivation, the seizure of Guevera's car on July 18, 2025, is more than four months.  (Am. Compl. ¶ 25).  Guevera also waited more than five weeks after receipt of the first notice of her right to a retention hearing to request one from Freeport, (Defs.' Opp'n at 2), despite having already filed this lawsuit.  This "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Tough Traveler*, 60 F.3d at 968.  And there is no explanation from Guevera in the record here that could explain or excuse this delay.  *See Monowise Ltd. Corp. v. Ozy Media, Inc.*, 17-CV-8028, 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) (collecting cases denying preliminary injunctions in circumstances of unexplained delays of two or three months).

Even were the Court to assume Guevera has a newfound urgency because of changed circumstances—namely, the job she lost that spiraled into other consequences of financial instability—the delay remains.  Guevera's brief and accompanying affidavit

9

are unfortunately lacking in necessary detail as to why or when she lost her job. As best the Court can surmise, Guevera may have lost her job sometime between September 2, 2025 and October 7, 2025. (Pl.'s PI Mot. at 3). At minimum, Guevera waited seven weeks to move for a preliminary injunction after she lost her job. At most, she waited almost three months. Nor has she provided any details about any potential eviction. These details are necessary to determine a host of issues, including whether, despite the seizure of her car some months ago, the consequences of the seizure only became more serious recently, and whether the consequences are traceable to the seizure of her car or some other factor. But none have been provided.

In any event, the unexplained nearly two-month (and possibly four-month) delay remains sufficient to rebut the presumption of irreparable harm. "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Monowise Ltd. Corp.*, 2018 WL 2089342, at *2 (quoting *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)) (collecting cases); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); *e.g.*, *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 442 (E.D.N.Y. 2013) ("In the four months after Plaintiffs initiated the instant action, Plaintiffs were neither unaware of, nor were they actively pursuing, their purported right to enjoin Defendant . . . . Accordingly, Plaintiffs do not

qualify for the limited exception to the general rule that delay destroys a presumption of irreparable harm.").

The absence of facts that could explain the apparent delay also demonstrate that any injury is not imminent. *Rodriguez*, 175 F.3d at 234–35 (explaining that imminence is a "principle element" for obtaining preliminary relief: "the harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm"); *Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995) ("[I]rreparable harm is measured in terms of the harm arising during the interim between the request for an injunction and final disposition of the case on the merits[.]"). Guevera provides the Court no information about the imminence of any future injury and provides instead only conclusory general assertions. (*See* Pl.'s PI Mot. at 3 ("Her loss of employment has also caused significant financial instability, as she is now at risk of eviction[.]"); Aff. of Samantha Guevera in Supp. of Prelim. Inj. dated Nov. 24, 2025, attached to Pl.'s PI Mot. as Attach. 8, Dkt. No. 41-8 ¶ 11 ("As a result of the financial strain of not having a car, my living situation has become strenuous and I may not be able to stay in my apartment much longer.")). Setting aside whether these consequences are causally linked to the constitutional violations, without any further detail as to when or even if she may face eviction, she cannot show that continued deprivation of her car imposes "actual and imminent" injury. *Schneiderman*, 787 F.3d at 660; *e.g.*, *Oliva v. Brookwood Coram I, LLC*, No. 14-CV-2513, 2016 WL 3637010, at *1 (E.D.N.Y. June 30, 2016) ("[B]ecause plaintiff is not now facing any realistic prospect of homelessness sufficient to demonstrate irreparable harm necessary to support an order of preliminary injunctive relief, plaintiff cannot show

11

irreparable harm at this time.") (adopting report and recommendation); *Byng v. Kelly*, No. 22-CV-1406, 2023 WL 2206547, at *9 (N.D.N.Y. Feb. 24, 2023) ("The mere threat of proceedings that might possibly lead to plaintiff's eviction at some unknown time in the future does not suffice to show irreparable harm."), *report and recommendation adopted*, 2023 WL 2573271 (Mar. 20, 2023).

Finally, Guevera's constitutional injury is remediable by damages, and thus injunctive relief is not appropriate.[4] *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("Irreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue."). "Monetary compensation need only be adequate for preliminary relief to be unwarranted, not perfect." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quotations omitted). Defendants argue that Guevera's injury—the seizure of her vehicle, plus any fees required to recover it—are compensable by a damages award, (Defs.' Opp'n at 6), and the Court agrees. "In cases alleging constitutional injury, a strong showing of a constitutional deprivation *that results in noncompensable damages* ordinarily warrants a finding of irreparable harm." *Kane v. De Blasio*, 19 F.4th 152, 172 (2d Cir. 2021) (per curiam) (quotation omitted). "It is well settled . . . that adverse employment consequences, like

---

[4] As the Court has already explained, to the extent Guevera claims that the injury in this case is the loss of her job or financial instability, those are too unsupported, speculative, or causally attenuated to constitute injury tied to the seizure of her vehicle or attendant deprivation of due process.  In any event, those injuries are compensable. *Kane v. De Blasio*, 19 F.4th 152, 171 (2d Cir. 2021) (per curiam) (explaining that lost income is an economic harm that is compensable with money damages).

12

the loss of income accompanying a suspension without pay, are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages." *Id.* at 171 (quotations omitted); *e.g.*, *Silber*, 960 F. Supp. 2d at 444 ("In light of Plaintiffs' repeated references to the 'premium price' garnered by Defendants . . . , as well as Plaintiffs' explicit prayer for compensatory damages, the Court concludes Plaintiffs may be adequately compensated through an award of money damages."); *Schulder v. Hooker*, No. 08-CV-3052, 2008 WL 4862461, at *1 (E.D.N.Y. Nov. 10, 2008) ("[T]here is . . . absolutely no showing that she could not be made whole by monetary damages for any loss of business suffered."). And Guevera's appeal to a dissipating asset case involving real property in inapposite. There is no suggestion that even if her vehicle is sold—which Defendants note is unlikely, though they do not commit to refraining from sale—she could be appropriately compensated through monetary relief, since there is no suggestion that her vehicle is "a unique piece of property in which [she] has an unquantifiable interest." *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22-CV-10656, 2023 WL 8947154, at *8 (S.D.N.Y. Dec. 28, 2023); *e.g.*, *Perry v. Perry*, No. 12-CV-5727, 2012 WL 12875462, at *2 (E.D.N.Y. Nov. 28, 2012) ("Plaintiff has not demonstrated any irreparable harm. Rather, these claims relate to money, financial instruments, or replaceable personal property.").

## CONCLUSION

Because the Court concludes Guevera has not shown the necessary irreparable harm to secure a preliminary injunction, the Court need not resolve whether the

13

heightened standard of a prohibitive injunction applies here, nor the likelihood of success on the merits or the balance of hardships.  *See St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 108 ("Because NAPA has failed to show that it will suffer irreparable harm, we do not consider its arguments as to the other preliminary injunction factors.").  Therefore, the motion for a preliminary injunction is denied.  The request for an immediate hearing is also denied, since that is just another means of requesting preliminary relief, which is unwarranted, for the reasons explained.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   December 4, 2025
        Central Islip, New York